**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

ST. JOHN'S DELIVERANCE TEMPLE,    :

      Plaintiff,    :

vs.    :    CA 11-0624-KD-C

FRONTIER ADJUSTERS, et al.,    :

      Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the notice of removal (Doc. 1), plaintiff's motion to remand and memorandum of law in support of the motion (Docs. 5 & 7), the defendants' response (Doc. 21), and plaintiff's reply brief (Doc. 24). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **DENY** plaintiff's motion to remand (Doc. 5) and retain jurisdiction of this matter.

## FINDINGS OF FACT

Prior to Hurricane Ivan, Hermitage Insurance Company ("Hermitage") issued an insurance policy to St John's Deliverance Temple ("St. John's") providing for wind damage coverage. (*See* Doc. 1, Exhibit A, COMPLAINT at ¶¶ 6-7.) St. John's was damaged by wind during Hurricane Ivan and made a timely claim under the policy issued by Hermitage. (*See id.* at ¶¶ 5 & 7.) Plaintiff's claim was adjusted and a check was

1

issued to plaintiff for its "purported wind damage[]" (*id.* at ¶ 7); St. John's, however, disagreed with the amount tendered by Hermitage and, in accordance with policy provisions, demanded an "'appraisal' of the damage." (*Id.* at ¶ 8.) Those policy provisions read, in relevant part, as follows:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a.      Pay its chosen appraiser; and
> b.      Bear the other expenses of the appraisal and umpire equally.
>
> It there is an appraisal, we will still retain our right to deny the claim.

(Doc. 7, Exhibit A, E.2.)

Hermitage identified as its appraiser Skip Macon ("Macon") but after numerous unsuccessful attempts by St. John's appraiser to communicate with Macon from November, 2010 through January 26, 2011, Hermitage agreed to appoint a new appraiser, David Coggin ("Coggin") of South Alabama Claims Service ("SACS"). (*See* Doc. 1, Exhibit A, COMPLAINT, at ¶ 9.) Coggin and St. John's appraiser eventually agreed upon an umpire, Dan Cushing, Esquire. (*Id.* at ¶ 10.)

On September 23, 2011, an appraisal award in the amount of $236,775.00 was made and concurred in by the umpire, Dan Cushing, and St. John's appraiser, Michael Bena. (*See id.,* Attached Appraisal of Insurance Claim.) Subsequent to entry of the award, counsel for Hermitage informed plaintiff's counsel that Hermitage planned to

contest the award "and not pay within the time limits required by the policy." (Doc. 1, Exhibit A, COMPLAINT, at ¶ 12.)

On October 5, 2011, St. John's filed this specific performance, negligence, wantonness, and civil conspiracy action defendants Frontier Adjusters ("Frontier"), Macon, SACS, Coggin, and Hermitage in the Circuit Court of Mobile County, Alabama. (Doc. 1, Exhibit A, COMPLAINT) Plaintiff asserts its specific performance claim only against the insurer, Hermitage, not against any of the other defendants. (*See id*. at 3.) Therefore, the complaint, as to Frontier, Macon, SACS, and Coggin, reads, in relevant part, as follows:

<u>**COUNT TWO**</u>
<u>**NEGLIGENCE**</u>
(Defendant Skip Macon)

16.     Plaintiff incorporates by reference paragraphs 1-15, inclusive, as if fully set forth.

17.     Appraiser Skip Macon by and through the direction of Frontier Claims (sic) negligently failed to communicate and respond to St. John's appraiser and attempt to appoint an umpire as required by the "appraisal process." Additionally, he and Frontier Claims (sic) negligently failed to participate in the appraisal process including the umpire selection, re-estimating the damage, re-inspecting, meeting with the opposing appraiser and chosen umpire and rendering an award of an amount of damage as determined by two of the three.

18.     This resulted in months of delay and caused the plaintiff to incur additional damage for lack of funds to provide protection to the damaged property and or repair the damaged property. In addition, it caused the plaintiff to lose interest on the money that was owed and caused the appraisal process to drag out over an extended period of time requiring a new appraiser to be selected and more time wasted.

Wherefore, the premises considered[,] the plaintiff prays this honorable court will award damages for loss of use of the damaged

property, interest on the eventual award and any other damages warranted by equity or law.

## COUNT THREE
## NEGLIGENCE
(Defendant David Coggin)

19.    Plaintiff incorporates by reference paragraphs 1-18, inclusive, as if fully set forth.

20.    Appraiser David Coggin by and through the direction of South Alabama Claims Services negligently failed to act independently without direction and guidance from Hermitage and or their counsel in the selection of an umpire, rewriting of an independent estimate, and the general handling of the appraisal process.

21.    This resulted in months of delay and caused the plaintiff to incur additional damage for lack of funds to provide protection to the damaged property and or repair the damaged property. In addition, it caused the plaintiff to lose interest on the money that was owed and caused the appraisal process to drag out over an extended period of time requiring a new appraiser to be selected and more time wasted.

Wherefore, the premises considered[,] the plaintiff prays this honorable court will award damages for loss of use of the damaged property, interest on the eventual award and any other damages warranted by equity or law.

## COUNT FOUR
## WANTONNESS
(Defendant Skip Macon)

22.    Plaintiff incorporates by reference paragraphs 1-21, inclusive, as if fully set forth.

23.    Appraiser Skip Macon by and through the direction of Frontier Claims (sic) wantonly failed to communicate and respond to St. John's appraiser and attempt to appoint an umpire as required by the "appraisal process." Additionally, he and Frontier Claims (sic) wantonly failed to participate in the appraisal process including the umpire selection, re-estimating the damage, re-inspecting, meeting with the

opposing appraiser and chosen umpire and rendering an award of an amount of damage as determined by two of the three.

24.     This resulted in months of delay and caused the plaintiff to incur additional damage for lack of funds to provide protection to the damaged property and or repair the damaged property. In addition, it caused the plaintiff to lose interest on the money that was owed and caused the appraisal process to drag out over an extended period of time requiring a new appraiser to be selected and more time wasted.

Wherefore, the premises considered[,] the plaintiff prays this honorable court will award damages for loss of use of the damaged property, interest on the eventual award, punitive damages, and any other damages warranted by equity or law.

## COUNT FIVE
## WANTONNESS
(Defendant David Coggin)

25.     Plaintiff incorporates by reference paragraphs 1-24, inclusive, as if fully set forth.

26.     Appraiser David Coggin by and through the direction of South Alabama Claims Services wantonly failed to act independently without direction and guidance from Hermitage and or their counsel in the selection of an umpire, rewriting of an independent estimate, and the general handling of the appraisal process.

27.     This resulted in months of delay and caused the plaintiff to incur additional damage for lack of funds to provide protection to the damaged property and or repair the damaged property. In addition, it caused the plaintiff to lose interest on the money that was owed and caused the appraisal process to drag out over an extended period of time requiring a new appraiser to be selected and more time wasted.

Wherefore, the premises considered[,] the plaintiff prays this honorable court will award damages for loss of use of the damaged property, interest on the eventual award, punitive damages, and any other damages warranted by equity or law.

## COUNT SIX
## CIVIL CONSPIRACY

28.    Plaintiff incorporates by reference paragraphs 1-27, inclusive, as if fully set forth.

29.    Defendants knowingly and willfully conspired and agreed among themselves to thwart the appraisal process in a fraudulent manner to reduce the amount owed to plaintiff.

30.    Skip Macon refused to communicate whatsoever after being identified as an appraiser. David Coggin refused to act independently as required and followed [the] direction[s] of Hermitage and or its counsel regarding umpire selection, the rewriting of an independent estimate, and an independent and unbiased general handling of the appraisal process as required. Hermitage intentionally controlled the process through their adjusters and counsel in an effort to restrict Coggin[] from providing an independent opinion and agreeing to an umpire without direction from Hermitage and or its counsel. Plaintiff has been damaged by loss of use of their (sic) property, loss of interest of funds eventually owed under the award, loss of use of the funds to make repairs which resulted in additional damages in the interim.

Wherefore, the premises considered[,] the plaintiff prays this honorable court will award damages for loss of use of the damaged property, interest on the eventual award, punitive damages, and any other damages warranted by equity or law.

(*Id*. at 4-7.)

The defendants timely removed this action to this Court on November 4, 2011 in accordance with the first paragraph of 28 U.S.C. § 1446(b). (*See* Doc. 1.) In the removal petition, the removing defendants argue that all citizenship, save that of Hermitage, need be disregarded by this Court because "[p]laintiff cannot establish any of the four (4) alleged causes of action against Defendants[.]" (*See* Doc. 1, at ¶ 10.) In addition, the removing defendants argue that the requisite jurisdictional amount is readily deducible from the complaint "since St. John's seeks specific performance in an award of $236,775." (*Id*. at ¶ 12.)

Plaintiff filed its motion to remand and memorandum of law in support of the motion on November 8 & 9, 2011 (Docs. 5 & 7). Plaintiff argues that the defendants have not carried their heavy burden of establishing fraudulent joinder inasmuch as it certainly has a possibility of establishing its tort and conspiracy claims against the resident defendants.  (*See* Doc. 7, at 3-7.)

> In *Taylor Newman, supra,* the court required remand and awarded attorney's fees because of a provision of Florida law that officers or agents of a corporation may be individually liable if they participate in a tort, "so long as 'the agent or officer personally participated in the tort.'" This principle is supported by Alabama law which also recognizes the corporate employer and individual employee are liable in tort, particularly for torts involving conspiracy and fraud.
>
> .      .      .
>
> The theory of officer or director liability has been applied in cases in which the plaintiffs asserted claims of negligence, *Crigler, supra,* and *Southeastern Construction Co. v. Robbins,* 248 Ala. 367, 27 So.2d 705 (1946). It is relevant that a duty was applicable to the relationship between the plaintiffs and the corporate employee involved. The negligence claim asserted in *Crigler,* negligence of a warehouseman, arose out of the duty created under our bailment laws. Similarly, in *Southeastern Construction* a fiduciary relationship was recognized to exist between the officers and directors of a dissolved corporation and its shareholders and creditors. The relationship in the case *sub judice* between Plaintiff and the Defendant appraisers, was based on the duties recognized in Alabama law which are applicable to the appraisal process involving an insurance policy dispute. *Rogers v. State Farm Fire and Cas. Co.,* 984 So.2d 382 (Ala. 2007).
>
> While it may be contended that a mere adjuster owed no duty to Plaintiff, Alabama law clearly imposes a duty on adjusters who are acting pursuant to an *appraisal provision*, who have been appointed to act as appraisers, and not merely as adjusters. It is elementary law that tort liability is premised on existence of a duty. Consequently, a sufficient showing of an arguable claim is made with respect to the adjusting firms and their agents, individual adjusters Messrs. Macon and Coggin[]. The recognition of "appraiser's duty" is recognized in *Rogers v. State Farm Fire and Cas. Co.,* 984 So.2d 382 (Ala. 2007).

Persuasive case law also establishes "[a]n adjuster may incur independent liability when his conduct constitutes a gross negligence, malice, or reckless disregard for the rights of the insured, but not for simple negligence." *Alfa Ins. Corp. v. Word of Faith Ministries,* 139 F.R.D. 350, 352 (S.D. Miss. 1991) . . . .[1] The imposition of a duty is without question where, as here, the adjuster was not acting merely as an adjuster, but was appointed as an appraiser, as part of the appraisal process, with a duty clearly recognized by the Alabama Supreme Court.

The Alabama Supreme Court has defined the role of the appraiser in terms of "appraiser's duty[.]" . . . Because of the existence of a duty, a final award entered by appraisers will be enforced in the absence of fraud, and the appraisers are also defined in Alabama in terms of the required status of "disinterested parties." . . . It is part of the allegations in the Complaint, that the Hermitage appraisers were by no means disinterested, and that they breached the duty imposed by law and contract.

Plaintiffs (sic) also state a claim for relief against the Defendants for conspiracy to commit fraud with respect to the appraisal process. Even a cursory search of Westlaw confirms that a viable conspiracy claim is presented with respect to "appraisals that manipulated values." *See, e.g., U.S. v. Ragland,* 20[1]1 WL 5041913 (10 Cir. 2011).[2]

---

[1]    The undersigned notes that in this case, Mississippi law, not Alabama law, was applied. *See id.* at 352.

[2]    All of the cases cited by plaintiff in support of this argument arise outside Alabama. (*See* Doc. 7, at 5-7.) Only at one point in this discussion does plaintiff attempt to "weave in" Alabama law. (*See id.* at 6 ("Defendants will likely contend the adjusters were independent and had no duty to Plaintiff. As noted, the situation is changed where the appraiser is acting pursuant to the appraisal process, and appointed as appraiser, so that he has a clearly recognized 'duty' under Alabama law to act as a 'disinterested' player. *Rogers v. State Farm* . . . . Courts have also recognized a cause of action in which Plaintiffs seek similar relief have alleged that Defendant carriers and their designated representatives in the appraisal process were engaged in improper practices such as employment of secret instructions for appraisers to use a conservative depreciation formula, thereby undermining the process. *Doan v. State Farm General Ins. Co.,* 195 Cal.App. 4th 1082 (2011). Additionally, a bad faith claim is justified under the facts presented in the case *sub judice* where the carrier has engaged in dilatory tactics. *United Technologies Corp. v. American Home Assur. Co.,* 118 F.Supp.2d 181, 187-188 (D.Conn. 2000).").) To the extent plaintiff claims, in making this argument, that it has now asserted a bad faith claim against the resident defendants, the undersigned need not determine if plaintiff has the possibility of stating a bad faith claim against the non-diverse defendants since plaintiff did not assert such a claim in its original complaint and this Court's jurisdictional (Continued)

(*Id.* at 3, 4 , 4-5 & 5 (many internal citations omitted; emphasis in original).)

Regarding the amount in controversy, plaintiff  makes no specific argument but does contend that the defendant has waited too long to challenge the appraisal award (of $236,775) (*see id.* at 7-9), thereby implicitly acknowledging that the amount in controversy exceeds $75,000, exclusive of interest and costs.

---

consideration is judged at the time of removal. *See Tillman v. R.J. Reynolds Tobacco,* 253 F.3d 1302, 1306 n.1 (11th Cir. 2001) ("For purposes of considering the specific jurisdictional question before us, we consider only the original complaint, however, because the question of diversity subject matter jurisdiction is determined on the plaintiff's pleadings at the time of removal."). In other words, while it is clear that the determination of whether a resident defendant has been fraudulently joined is based upon the plaintiffs' "pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties[,]" *Pacheco de Perez  v. AT & T Co.,* 139 F.3d 1368, 1380 (11th Cir. 1998), it is also very consistently clear that "[p]ost-removal filings may not be considered [] when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs  v. State Farm Lloyds,* 181 F.3d 694, 700 (5th Cir. 1999); *see also Widder v. State Farm Fire & Casualty Co.,* 2010 WL 4386698, *2 (E.D. Cal. Oct. 28, 2010) ("In deciding whether joinder was fraudulent, the court will not look at post-removal filings to the extent they introduce new causes of action or legal theories."); *King v. Provident Life & Accident Ins. Co.,* 2010 WL 2730890, *2 (E.D. Tex. June 4, 2010) ("Because the petition as filed in state court controls the inquiry, post-removal filings may not be considered when or to the extent that they present new causes of action or theories."), report & recommendation adopted by 2010 WL 2730888 (E.D. Tex. July 9, 2010); *see Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 263 & n.14 (5th Cir. 1995) (finding no case law supporting the plaintiffs' assertion that post-removal affidavits can be used to defeat removal by presenting new causes of action against the nondiverse defendant not alleged in the state court complaint); *cf. Nelson v. Whirlpool Corp.,* 727 F.Supp.2d 1294, 1304 & 1305 (S.D. Ala. 2010) ("Allowing a post-removal amendment to eliminate jurisdiction that existed at the time of removal would [] nullify the well-established rule that the determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal. That rule prevents a plaintiff from avoiding a fraudulent joinder determination (and thus securing remand) by amending the complaint, before a ruling on the fraudulent joinder issue, to insert a previously excluded viable claim. But the rule would be rendered pointless if a plaintiff could simply wait until after a fraudulent joinder determination, then make the same amendment and thereby secure remand. Nothing presented to the Court commends such an implausibly tortured result. . . . [T]he post-removal assertion of a viable cause of action against a fraudulently joined defendant does not strip the Court of subject matter jurisdiction that existed at the time of removal.").

In opposition to plaintiff's motion to remand, the removing defendants contend that plaintiff has not shown "that a cause of action against an appraiser in the insurance contract context exists in Alabama law." (Doc. 21, at 9; *see also id.* at 10-11 ("Plaintiff has failed to locate or cite any case law from Alabama that recognizes its alleged causes of action. Since no such case law is available, and since Alabama does not incorporate any statutory provisions on the subject, it is clear that Plaintiff fails to state a cognizable legal claim against the fraudulently joined Defendants and that Removal is appropriate.").)

> [The] lack of privity of contract between Plaintiff and the other Defendants further substantiates Defendants' contention that Plaintiff has failed to effectively state any viable cause of action against the Alabama resident Defendants. Plaintiff's claims are grounded in the insurance contract that existed between St. John's and Hermitage. Plaintiff claims the appraisal award is valid and seeks specific performance for an Order requiring Hermitage to pay it. It "won" the appraisal. The umpire agreed with its appraiser. Plaintiff's alleged causes of action against the Defendants other than Hermitage relate to what Plaintiff alleges those Defendants did or did not do during the appraisal process. Those Defendants did not owe any duty to Plaintiff. Their duty was owed to Hermitage to appraise the loss on behalf of Hermitage and present that appraisal to an umpire. Absent duty, there is no cause of action. Duty is a question of law for the Court.

.      .      .

> Hermitage submits to the Court that there is no reasonable basis to believe that the Alabama Supreme Court would recognize a cause of action against appraisers. The body of case law surrounding the adjustment and handling of claims indicates the Alabama Supreme Court's disdain for such causes of action. In the original adjustment of a claim, there is no cause of action for negligence or wantonness or fraud in adjusting an insurance claim. The reason for this is that the insurance company is liable for breach of contract for the conduct of its employees, servants or agents if they act improperly in the adjustment process; and, if the conduct is sufficient to give rise to a claim for "bad faith," the insurance company

can be liable for the tort of "bad faith" as well. The Alabama Supreme
Court has found those causes of action sufficient to redress perceived or
alleged wrongs done to the insured during the adjustment process.
Appraisal is part of the adjustment process. It occurs after there has been
agreement on the scope of loss, but disagreement over the valuation of
that scope of loss. *Rogers v. State Farm Fire & Casualty Co.,* 984 So.2d 382
(Ala. 2007). The appraiser is acting on behalf of the insurance company,
presenting the insurance company's position on the value of the loss to the
umpire. There is no privity of contract between the appraiser and the
insured. If any party had a cause of action against the appraiser for
negligence, it is the insurer, not the insured. On failure to pay an appraisal
award, the insured has a cause of action for breach of contract or specific
performance against the insurer, as has been pled in this case. Its causes of
action stop there. It has no cause of action against the appraiser involved
in the appraisal process. This is not a case where "there are doubtful
issues of law due to lack of pronouncements by the state supreme court"
warranting remand for the state court to address. The Alabama Supreme
Court has made a definite pronouncement: "[T]his Court has consistently
refused to recognize a cause of action for the negligent handling of
insurance claims, and it will not recognize a cause of action for alleged
wanton handling of insurance claims."

(*Id.* at 11-12 & 14-16 (internal citations and footnotes omitted).)

In reply, plaintiff argues that "this action should be remanded because case law

cited by Hermitage recognizes existence of a duty by the appraisers appointed pursuant

to an insurance contract appraisal clause, and there is more than a possibility that

Alabama law recognizes a tort claim against the appraisers for breach of duty." (Doc.

24, at 1.)

The existence of a duty in this case is the difference, however, and
precisely the reason that a cause of action exists in this case because of the
nature of the appraisal process *versus* mere adjusting. Appraisers acting
pursuant to an appraisal provision, unlike mere adjusters operating
outside the appraisal process, do in fact owe various duties to the plaintiff.

It is the existence of a duty that distinguishes the case *sub judice*
from the string cite offered by Hermitage. The Alabama Supreme Court
has recognized that the appraisal process differs from traditional claims

11

adjusting by virtue of the fact that, once the appraisal process is initiated, the individual appraiser does, in fact, owe a duty to the insured. Hermitage therefore does not distinguish the Alabama authority relied on by Plaintiff which, clearly, recognizes existence of a "duty" in the context of the appraisal process.

(*Id.* at 2 (emphasis in original).)

## CONCLUSIONS OF LAW

### A.    Jurisdiction in General.

There can be no doubt but that "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]"   (internal citations omitted)). Moreover, the removing defendant must bear "the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998)

(citation omitted); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted).

Where, as here, jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 (*see* Doc. 1, at ¶¶ 12 & 14 ("In addition to diversity of citizenship among the real and proper parties to this cause, this Court has jurisdiction under 28 U.S.C. § 1332, and removal is proper pursuant to 28 U.S.C. § 1441, in that there is a sufficient basis that the jurisdictional amount in controversy has been met, since St. John's seeks specific performance in an award of $236,775. . . . This Court has original jurisdiction of the above-entitled action pursuant to 28 U.S.C. § 1332, and since Defendant Hermitage is not a resident citizen of the State of Alabama, wherein the above-entitled action is pending, and Defendants . . . have been fraudulently joined, removal of this action to this Court is proper pursuant to 28 U.S.C. § 1441."))[3] the removing defendants, bear the burden of establishing complete diversity of citizenship, that is, that the plaintiffs are diverse from all the defendants, *Triggs, supra*, 154 F.3d at

---

[3]     Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).

1287 (citation omitted), and, in addition, must establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement."), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Moreover, as a procedural matter, the removal must be timely. *See, e.g.,* *Clingan v. Celtic Life Ins. Co.*, 244 F.Supp.2d 1298, 1302 (M.D. Ala. 2003) ("The time limit in 28 U.S.C. § 1446(b) is 'mandatory and must be strictly applied.'"); *cf. Moore v. North America Sports, Inc.*, 623 F.3d 1325, 1329 (11th Cir. 2010) ("[T]he timeliness of removal is a procedural defect-not a jurisdictional one.").[4]

### B.    Whether Complete Diversity of Citizenship Exists.

As previously indicated, the diversity statute, 28 U.S.C. § 1332, demands complete diversity, such that plaintiff may not be a citizen of the same state as any defendant. *See, e.g., Florence v. Crescent Resources, LLC,* 484 F.3d 1293, 1297 (11th Cir. 2007) (recognizing "necessary corollary" of diversity jurisdiction that "complete diversity of citizenship" is required); *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("28 U.S.C. § 1332 requires 'complete diversity'-the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").

---

[4]    There is no question but that the removal petition was timely filed, plaintiff making no argument to the contrary. (*See* Docs. 5, 7 & 24.)

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs, supra,* 154 F.3d at 1287. Notwithstanding the complete diversity requirement, non-diverse defendants who are fraudulently joined do not destroy jurisdiction because their citizenship is properly excluded from the diversity equation. Under well-settled law, a finding of fraudulent joinder is appropriate in circumstances presented here only if "'there is *no possibility* the plaintiff can establish a cause of action against the resident defendant[s].'" *Henderson v. Washington Nat'l Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir. 2006) (emphasis supplied; citation omitted); *see also Florence, supra,* 484 F.3d at 1299 ("[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary."); *Triggs*, 154 F.3d at 1287 ("'If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'"). Thus, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant[s]; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Id.* (citation omitted); *see also Pacheco de Perez v. AT & T Co.,* 139 F.3d 1368, 1380 (11th Cir. 1998) ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court.").

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal,

15

supplemented by any affidavits and deposition transcripts submitted by the parties. . . . In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380 (citations omitted); *see also Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. . . . The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) ("In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.").

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," the jurisdictional inquiry "must not subsume substantive determination." Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."

*Crowe, supra*, 113 F.3d at 1538 (internal citations omitted).

"In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'"

*Pacheco de Perez*, 139 F.3d at 1380-1381 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

> In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

*Crowe*, 113 F.3d at 1541-1542 (internal citations omitted).

Because the removing defendants must show by clear and convincing evidence that there is no possibility plaintiff can establish a cause of action against the resident defendants, *Henderson,* 454 F.3d at 1281, it is no surprise that courts describe the burden on the removing parties to prove fraudulent joinder as a "heavy one." *Crowe,* 113 F.3d at 1538 (citation omitted).

Since St. John's, along with defendants Frontier, Macon, SACS, and Coggin, are Alabama citizens for diversity purposes, the removing defendants, led by Hermitage, predicate removal jurisdiction under § 1332 on their argument that the citizenships of

Frontier, Macon, SACS, and Coggin do not count in the diversity analysis since they were fraudulently joined. The analysis in this case has been distilled down to whether a possibility exists that plaintiff can establish a negligence[5] or wantonness[6] claim against the resident defendants under Alabama law.[7]

---

[5]     The Alabama Supreme Court defines negligence as "the failure to do what a reasonably prudent person would have done under the same or similar circumstances or the doing of something that a reasonably prudent person would not have done under the same or similar circumstances." *Ford Motor Co. v. Burdeshaw,* 661 So.2d 236, 238 (Ala. 1995) (citation omitted). A plaintiff must establish four elements under a typical negligence claim: "(1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or an injury; and (4) that the defendant's negligence was the actual and proximate cause of that loss or injury." *Id.* (citation omitted); *see also Prill v. Marrone,* 23 So.3d 1, 6 (Ala. 2009) ("'The elements of a negligence claim are a duty, a breach of that duty, causation, and damage.'").

[6]     Wantonness is defined under Alabama law as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3); *see also IMAC Energy, Inc. v. Tittle,* 590 So.2d 163, 169 (Ala. 1991) ("Wantonness is the doing of some act or the omission to do some act with reckless indifference that such act or omission will likely or probably result in injury."). Wantonness is qualitatively different from negligence under Alabama law. *See Tolbert v. Tolbert,* 903 So.2d 103, 114 (Ala. 2004) ("'"Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability."'"), *cert. denied,* 544 U.S. 1000, 125 S.Ct. 1945, 161 L.Ed.2d 774 (2005). Indeed, the Alabama Supreme Court has recognized that "a jury may find a defendant wanton without finding the defendant negligent." *Sparks v. Alabama Power Co.,* 679 So.2d 678, 682 (Ala. 1996) (citation omitted).

[7]     Plaintiff's complaint does not state a breach of contract/specific performance claim against any of the resident defendants (*see* Doc. 1, Exhibit A, COMPLAINT, at 3) but even if it did, there is no possibility plaintiff can establish a breach of contract/specific performance claim against the resident defendants because none of these defendants is a party to the insurance policy at issue in this case, *compare 1631 Second Avenue North, L.L.C. v. Raine,* 963 So.2d 71, 74-75 (Ala. 2007) (in discussing specific performance pro tanto, Alabama's high court noted the long-established principle that "neither **party** to a contract is entitled to specific performance as a matter of right[]" (emphasis supplied; internal quotation marks and brackets omitted)) and *Ex parte A.B./Wildwood Ltd. Partnership*, 793 So.2d 784, 787 (Ala. 2000) ("'The doctrine of mutuality of remedy originally held that a **party** to a contract may not obtain **specific performance** of the **other party's obligation** under the contract if the party seeking specific performance cannot be compelled to specifically perform.'" (emphasis supplied)) *with* (Continued)

The Alabama Supreme Court has "consistently refused to recognize a cause of action for the negligent handling of insurance claims, and . . . [does] not recognize a cause of action for alleged wanton handling of insurance claims." *Kervin v. Southern Guaranty Ins. Co.,* 667 So.2d 704, 706 (Ala. 1995) (citations omitted); *see also State Farm Fire & Cas. Co. v. Agee,* 2009 WL 1441537, *6 (S.D. Ala. May 21, 2009) ("Alabama does not recognize a cause of action for negligent and wanton claim handling[.]").[8] This refusal to recognize causes of action for the negligent and wanton handling/adjusting of insurance claims has evolved principally because of the recognition that the insured is not left without a remedy inasmuch as the insurer can still be sued for breach of

---

*Pate v. Rollison Logging Equipment, Inc.,* 628 So.2d 337, 343 (Ala. 1993) ("The insurance contracts were between Pate and the insurers. Anderson cannot be liable for breach of contract, because he acted as a broker to place the insurance and was not a party.") *and Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc.,* 551 So.2d 283, 285 (Ala. 1989) ("The undisputed evidence reveals that Hughes was not a party to Ligon's insurance contract with Compass and that Gay & Taylor and Routledge were not parties to it either. Thus, the trial court properly entered summary judgment on the claim alleging a breach of the insurance contract.").

Finally, because this Court need consider whether a possibility exists that plaintiff can establish a negligence or wantonness claim against the resident defendants under Alabama law, the undersigned finds no occasion to consider the numerous cases plaintiff relies upon from outside Alabama. (*See* Doc. 5, at 3-5; Doc. 7, at 4-6.)

[8]      Additionally, "[i]n deciding whether an independent adjustor or investigator with whom an insurance company contracts for the investigation and adjustment of claim[s] owes a duty to the insured, the Alabama Court of Civil Appeals is in agreement with the majority of courts from other jurisdictions in holding that such an adjustor or investigator owes a duty only to the insurance company that hired it." *Pyun v. Paul Revere Life Ins. Co.,* 768 F.Supp.2d 1157, 1178-1179 (N.D. Ala. 2011) (citations omitted); *see also Akpan v. Farmers Ins. Exchange, Inc.,* 961 So.2d 865, 874 (Ala.Civ.App. 2007) ("[W]e agree with those courts that have refused to find that an independent adjustor or investigator that was hired by an insurance company to investigate or adjust the claim of one of its insureds owes a duty to the insured.").

contract and, as well, for the tort of bad faith. *See, e.g., Chavers v. National Sec. Fire & Cas. Co.,* 405 So.2d 1, 4-7 (Ala. 1981).

Just as claim handling/adjusting is specifically contemplated in insurance contracts, so too is appraisal, as reflected in the instant insurance contract (*see* Doc. 7, Exhibit A). Therefore, it is logical to recognize that claims handling/adjusting and appraisal of the value of property/loss fall on the same continuum, appraisal coming after the parties have agreed on coverage, that is, agreed there is a covered loss, but have a dispute regarding the amount of the covered loss. *See Southern United Fire Ins. Co. v. Knight,* 736 So.2d 582, 585 n.2 (Ala. 1999) ("[T]he more dispute-specific appraisal provision should be read as applying when there is no dispute over coverage but there is a dispute as to the amount of a covered loss."). Accordingly, there is no question but that the Supreme Court of Alabama would, consistent with *Kervin* and *Akpan, supra,* find that there is no cause of action in Alabama for negligent and/or wanton appraisal of a loss under a contract of insurance since the insured, in such a situation, is not without remedy but may sue its insurer for breach of contract and the tort of bad faith.

That there can be no remedy beyond assertion of breach of contract and bad faith against the insurer for actions that arise as a result of application of specific provisions of the contract of insurance is clear even in light of the Alabama Supreme Court's holding in *Rogers v. State Farm Fire & Cas. Co.,* 984 So.2d 382 (Ala. 2007). As noted by this Court, the *Rogers* court, "[a]fter canvassing the mixed case law from other jurisdictions on the subject . . . [concluded] that 'an appraiser's duty is limited to determining the "amount of loss"-the monetary value of the property damage-and that appraisers are

not vested with the authority to decide questions of coverage and liability . . . .
Questions of coverage and liability should be decided only by the courts, not
appraisers.'" *Caribbean I Owners' Ass'n, Inc. v. Great American Ins. Co. of New York*, 619
F.Supp.2d 1178, 1183 (S.D. Ala. Mar. 10, 2008), quoting *Rogers, supra,* 984 So.2d at 392.
Nowhere in the *Rogers* decision did the Alabama Supreme Court indicate, much less
hold, that an appraiser's "duty" is owed to an insured under a policy of insurance
because this was not the context in which *Rogers* was written. Rather, the focus of the
Supreme Court's decision in *Rogers*, *see id*. at 389 ("What are the duties and powers of
an appraiser when he or she 'set[s] the amount of the loss' under an appraisal clause
contained in a homeowner's insurance policy? . . . 'We have considered the holdings of
other jurisdictions interpreting appraisal provisions containing substantially similar
language to that contained in the policy at issue in this case in concluding that
appraisers have no power to determine the cause of the damage[]. Their power is
limited to the function of determining the money value of the property damage.'"),
simply was "to delineate the boundaries of insurance appraisers' role[,]" *Caribbean I
Owners' Ass'n, Inc., supra,* 619 F.Supp.2d at 1182, that is, their responsibility under
appraisal provisions of a contract of insurance. Insurance appraisers were not sued in
*Rogers* and the Supreme Court, no doubt in light of *Kervin*, gave no indication that
appraisers could be sued;[9] instead, Alabama's high court simply recognized the very

---

[9]        Indeed, plaintiff has not cited to any case, nor can the undersigned find one,
wherein an appraiser has been sued for breach of the "duty" recognized in *Rogers.* The only case
the undersigned has come across is a decision penned by the Alabama Court of Civil Appeals in
(Continued)

limited role of appraisers under contracts of insurance. In other words, the *Rogers* court did not recognize that an appraiser has a specific legal duty to a party who did not name (and pay) that appraiser[10] under the contract of insurance.

In light of the foregoing, the undersigned finds that the plaintiff's negligence and wantonness claims asserted against the non-diverse defendants in its state court complaint are obviously "frivolous or fraudulent[.]" *Crowe*, 113 F.3d at 1542.[11] Since the removing defendants have shown by clear and convincing evidence that there is no possibility the plaintiff can establish a cause of action against the resident defendants under Alabama law, the citizenship of each of these defendants is properly excluded from the diversity equation and complete diversity of citizenship is found to exist.

---

late 2011, not yet released for publication, wherein the court concluded that the insured had waived his right to an appraisal. *See Jadick v. Nationwide Property & Cas. Ins. Co.*, 2011 WL 6275693, *10 (Ala.Civ.App. Dec. 16, 2011).

[10]     Plaintiff's argument, if accepted, would only encourage the insurer to bring in the plaintiff's named appraiser (and the umpire) and assert tort claims against those individuals thereby creating a situation whereby impartial appraisers could not be found. *Cf. Akpan, supra,* 961 So.2d at 873 n.5 (Ala.Civ.App. 2007) ("'Insurance is a highly uncertain and risky endeavor, because it requires accurate predictions about the occurrence and cost of future events. Insurers are able to define and limit the risks, and to set premium levels commensurate with the risks, using complex and nuanced contracts (policies). By contrast, adjusters hired by insurers have no contract with insureds, and thus no ability to define or circumscribe their potential risks or liabilities to insureds. If adjusters faced negligence liability to insureds, market forces would tend to drive adjusting activities in-house, where they could be shielded with contractual exclusions, disclaimers, and limitations. Thus, imposing a duty would reduce, perhaps severely, the offering of independent adjuster services.'").

[11]     Plaintiff's conspiracy claim fails for lack of an underlying tort. *See, e.g., Goolesby v. Koch Farms, LLC,* 955 So.2d 422, 430 (Ala. 2006) ("A civil conspiracy cannot exist in the absence of an underlying tort."); *Callens v. Jefferson County Nursing Home,* 769 So.2d 273, 280 (Ala. 2000) ("A plaintiff alleging a conspiracy must have a valid underlying cause of action."). "'Conspiracy itself furnishes no civil cause of action.'" *Tillman v. R.J. Reynolds Tobacco Co.,* 871 So.3d 28, 35 (Ala. 2003) (bracket and citation omitted).

C.     **Whether the Amount in Controversy Has Been Satisfied.**

Mere diversity, in and of itself, is not sufficient to create jurisdiction under § 1332 since "the court is obligated to assure itself that the case involves the requisite amount in controversy." *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (citations omitted). In *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (2010), a panel of the Eleventh Circuit reminded district courts that the first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section. *See id.* at 760. This is not only because the first paragraph of § 1446(b) does not "restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal." *Id.* at 771; *see also id.* at 759 (a removing defendant can offer its "own affidavits or other evidence to establish federal removal jurisdiction[,]"); *id.* at 755 & 756 ("The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation-provided of course that removal is procedurally proper. . . . The other circuit courts of appeal that have addressed the issue agree with our circuit law that defendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal. . . . No court of appeals decision we could find holds that a defendant may not submit its own evidence in order to satisfy the jurisdictional requirements of removal, and we conclude that the defendant can."); *id.* at 761 ("*Lowery's* 'receipt from the plaintiff' rule has no application to cases, like this one, which are removed under the *first* paragraph of § 1446(b)."), but, as well, because "the use of deduction, inference, or

23

other extrapolation of the amount in controversy is []permissible," *id*. at 753; *see also id*. ("A different question is presented [] when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations. That kind of reasoning is not akin to conjecture, speculation, or star gazing."); *id*. at 770 ("It is true that '[n]othing in Lowery says a district court must suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount.' . . . And viewing facts through the lens of common sense is not star gazing."), and "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id*. at 754; *see also id*. ("The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions then we all do in everyday life.").

Inasmuch as the instant removal petition was filed within thirty (30) days of service of the complaint (*compare* Doc. 1 (filing date of November 4, 2011) *with* Doc. 1, Exhibit A, COMPLAINT (electronically filed on October 5, 2011 in the Circuit Court of Mobile County, Alabama)), this is a first paragraph removal under § 1446(b).[12] Therefore, in line with *Pretka*'s reminder that the first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section, and

---

[12] "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b).

the plaintiff's failure to argue that its request for specific performance of the appraisal award of $236,775.00 does not establish the requisite amount in controversy, the undersigned recommends that the Court find that the removing defendants have demonstrated by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement.[13]

## **CONCLUSION**

For the reasons set forth above, it is **RECOMMENDED** that plaintiff's motion to remand (Doc. 5) be **DENIED.** The sole remaining defendant in this case is Hermitage.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 27th day of February, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[13]     Indeed, the plaintiff attached to its complaint the appraisal award. (*See* Doc. 1, Exhibit A, COMPLAINT, Attached APPRAISAL OF INSURANCE CLAIM.)

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[14] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[14]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).